IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| **LEVEL 3 COMMUNICATIONS, LLC,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 3:12cv82-DJN** |
| ) | |
| **WEBB, INC.,** ) | |
| ) | |
| **Defendant and Third Party Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **ACCUMARK, INC.,** ) | |
| ) | |
| **Third Party Defendant.** ) | |
| _____) | |

## MEMORANDUM OPINION

While excavating at a construction site, Webb, Inc. ("Webb" or the "Defendant") severed a series of fiber-optic cables owned by Level 3 Communications, LLC ("Level 3" or the "Plaintiff"). In doing so, Webb appears to have assumed the incorrect location and depth of the cables based on information provided by Accumark, Inc. ("Accumark" or the "Third Party Defendant"). To recover the cost of repair, lost use of the cables and punitive damages, Level 3 filed the instant action against Webb asserting claims for trespass, negligence and violation of Va. Code §§ 56-265.17, 56-265.24. In turn, Webb brought a third-party claim against Accumark asserting breach of contract, equitable indemnity and contribution.

This matter is now before the Court by consent of the parties pursuant to 28 U.S.C. § 636(c)(1) on Third-Party Defendant Accumark's Motion to Dismiss Counts II and III of Webb's

Amended Third Party Complaint (ECF No. 24).[1]  The matter has been thoroughly addressed by the parties' submissions; therefore, the Court dispenses with oral argument, finding that it will not materially aid in the decisional process.  Because Accumark filed its Motion to Dismiss contemporaneously with its Answer, the Court will treat the motion as seeking judgment on the pleadings pursuant to Rule 12(c), rather than as motions to dismiss pursuant to Rule 12(b)(6).[2]  *See Walter v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009).  Construed in this fashion, and for the reasons set forth herein, the Court will DENY the motion.

## I. BACKGROUND

The Court construes the allegations in favor of Webb as the non-moving party, as required when resolving a motion for judgment on the pleadings. Fed. R. Civ. P. 12(c); *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 591 (4th Cir. 2004) (citations omitted).  Viewing the matter through such a lens, the Court has concluded that the facts are as follows.

Level 3 owns and maintains a nationwide fiber optic cable network, most of which is buried underground. (Compl. at ¶ 5.)  One such cable is buried near Gosnell Road in Vienna, Virginia, where Webb was excavating at a construction site in February 2009. (*Id.* ¶¶ 6, 8.)  To prepare for excavation, Webb hired Accumark to locate and identify all underground utilities in the area, including the type of cables owned by Level 3. (Am. 3d Party Compl. at ¶ 2, Ex. 1.)  To that end, Webb and Accumark executed a contract (the "Contract") containing the following relevant provisions:

---

[1] Accumark had previously filed a motion to dismiss Webb's original pleadings (ECF No. 16), which is rendered moot, because Webb has since filed its amended third party claim.

[2] As the Court shall explain, *infra* at Section II, the standard of review governing a motion made pursuant to Rule 12(c) is identical to the standard governing a motion under Rule 12(b)(6). The sole difference is that the Court may consider all pleadings, including answers, instead of simply reviewing the complaint.

Utility Quality level A (QL-A) Designating and Locating: Precise horizontal and vertical location of utilities obtained by the actual exposure and subsequent measurement of subsurface utilities; usually at a specified point i.e. designation in conjunction with locating.  Minimally intrusive excavation equipment (Vacuum Excavation) is typically used to minimize the potential for utility damage.  A precise horizontal and vertical location as well as other utility attributes if possible are surveyed and reduced onto plan documents.  Accuracy is typically set at 0.5 inches (15 mm) vertical, and to applicable horizontal survey and mapping standards as defined or expected by the project owner.

. . . .

Every reasonable effort will be made to locate all systems of interest whether indicated on records available to us or not.  However, we do not guarantee that all existing utility systems can or will be detected.  It may not be possible to detect utilities without prior knowledge, such as systems that are not depicted on records available to us.

(*Id.* Ex. 1.)

Pursuant to the Contract, Accumark provided Webb with a report identifying six conduits containing utilities in the area.  (*Id.* at ¶ 4.)  The report showed the conduits to be located between 9 and 9.3 feet below the surface.  (*Id.*)  These figures were inaccurate.  (*Id.* at ¶ 5.)  As it turns out, the subject utilities contained twenty conduits at a depth extending 11.5 feet.  (*Id.*)  Relying on the incorrect information provided by Accumark, Webb severed the fiber optic cable conduit owned by Level 3 while excavating with mechanized equipment.  (*Id.* at ¶ 6; Compl. at ¶ 11.)  This caused Level 3 to suffer damages from repair costs and the lost use of the cable.  (Compl. at ¶¶ 12, 16, 20.)

As a result of this incident, Level 3 initiated this lawsuit against Webb, asserting claims for trespass, negligence and violation of Virginia's Underground Utility Damage Prevention Act, Va. Code §§ 56-265.17 and 56-265.24.  (Compl. at ¶¶ 9-20.)  In response, Webb brought a third party claim against Accumark alleging that it's failure to accurately locate Level 3's fiber optic cables constituted a breach of contract.  (Am. 3d Party Compl. at ¶¶ 7-12, Ex. 1.)  Webb also

3

asserts claims for equitable indemnity and contribution. (*Id.* at ¶¶ 13-26.) Accumark now moves for dismissal of the equitable indemnity and contribution claims. (Mem. Sup. Accumark's Mot. to Dismiss ("Accumark's Mem.") at 2.)

## II. STANDARD OF REVIEW

A motion for judgment on the pleadings made pursuant to Rule 12(c) is decided under the same standard as a motion to dismiss made pursuant to Rule 12(b)(6) with the sole difference being that the Court is to consider the answer in addition to the complaint. *Walker*, 589 F.3d at 139. "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not assert "detailed factual allegations," but must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* (citation omitted), to one that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* In considering such a motion, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *T.G. Slater & Son v. Donald P. and Patricia A. Brennan, LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (citation omitted). Legal conclusions enjoy no such deference. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III. DISCUSSION

Webb's Amended Third Party Complaint asserts claims for breach of contract (Count I), equitable indemnity (Count II), and contribution (Count III). Accumark does not challenge the legal sufficiency of the breach of contract allegations in its motion. However, it argues that both the indemnity and contribution claims fail as a matter of law. Specifically, Accumark argues that the indemnity claim must be dismissed where Level 3's claim is based on Webb's active negligence or wrongdoing. Alternatively, Accumark argues that indemnity claims are premature, since liability has not yet been established against Webb. (Accumark's Reply Sup. Mot. to Dismiss ("Accumark's Reply") at 3.) With respect to the contribution claim, Accumark argues that it owed no duty to Level 3, thus precluding joint liability and, thus, any resulting claim for contribution owed to Webb. Neither argument counsels dismissal of Webb's Counts II and III, particularly when the pleadings are construed in Webb's favor. *See T.G. Slater*, 385 F.3d at 841 (citation omitted). Accordingly, for the reasons that follow, the motion to dismiss will be denied.

### A.      Equitable Indemnity (Count II)

Accumark makes two arguments in support of dismissing Webb's equitable indemnity claim. Substantively, it argues that the doctrine of "active negligence" forecloses the indemnity claim. (Accumark's Mem. at 3-5.) As an additional, procedural argument, Accumark contends that a claim for equitable indemnity is premature, because it may not be raised until after Level 3 establishes liability against Webb. (Accumark's Reply at 3.) Having examined both issues, the Court finds neither argument persuasive.

5

**1.    Active Negligence Rule**

In Virginia, "[i]f a defendant is guilty of active negligence, he may not obtain indemnification from any other defendant."[3] *Philip Morris, Inc. v. Emerson*, 368 S.E.2d 268, 285 (Va. 1988) (citations omitted).  The same rule has been construed to apply to intentional torts.  *See E.I. DuPont De Nemours & Co. v. Kolon Industs., Inc.*, 688 F. Supp. 2d 443, 464 (E.D. Va. 2009) (citing *Philip Morris*, 368 S.E.2d at 285).  Thus, Webb's equitable indemnity claim against Accumark fails if Webb is found liable to Level 3 due to active negligence or an intentional tort.

In general, "a party is actively negligent when its conduct was the proximate cause of the underlying plaintiff's injury and where the nature of the legal liability is more than vicarious." *Robert's Farm Equip., Inc. v. William Hackett Chains, Ltd.*, No. 1:10cv282, 2011 U.S. Dist. LEXIS 4851, at *19-20 (E.D. Va. Jan. 4, 2011); *see also Phillip Morris*, 368 S.E.2d at 285.  The Chief Judge of this District explained the rule as follows:

> Indemnification is warranted in a case . . ., in which the indemnitor is the active or primary wrongdoer and the indemnitee is the passive or secondary wrongdoer. Indemnity shifts the entire loss from the person whose fault is passive to the person who . . . is primarily liable.  Equitable indemnification has specifically been allowed where the indemnitee has without fault or only through passive

---

[3] Ordinarily, a federal court sitting in diversity must apply the choice of law rules of the state in which it sits — Virginia in this case. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938); *see also Felder v. Casey*, 487 U.S. 131, 151 (1988) (citation omitted).  The parties have not discussed Virginia choice of law rules, but rely exclusively on Virginia law in their briefs. Because the parties fail to object to Virginia law, the Court may deem them to assent to its application here. *See Rutherford v. John Hancock Mut. Life Ins. Co.*, 562 F.2d 290, 292 n.2 (4th Cir. 1977).  Moreover, regardless of whether the claims arise in tort or contract, Virginia law would apply. *Dreher v. Budget Rent-A-Car Sys., Inc.*, 634 S.E.2d 324, 327 (Va. 2006) (where liability is premised on tort, "Virginia applies the doctrine of *lex loci delicti*, meaning the law of the place of the wrong governs"); *Black v. Powers*, 628 S.E.2d 546, 554 n.8 (Va. App. 2006) ("[E]verything relating to the *making* of the contract is to be governed by the law of the place where it was made; everything relating to the *performance* of the contract is to be controlled by the law of the place of performance") (emphasis in original) (citation and internal quotation marks omitted).

6

negligence failed to discover . . . a defect in products created or supplied by the [actively negligent] indemnitor.

*Williams ex rel. Estate of Williams v. United States*, 469 F. Supp. 2d 339, 343 (E.D. Va. 2007) (Smith, C.J.) (citations and internal quotation marks omitted).  Thus, the crux of the active-passive distinction involves attribution of true fault.

The facts from the *Williams* case are instructive here.  In that case, an employee of the U.S. Navy lost control of a bus leased by the Navy from a private company, killing a pedestrian in the process.  *Id.* at 340-41.  After the pedestrian's estate brought a claim against both the United States and the bus company, the United States filed a cross-claim for indemnification based on the company's failure to repair a steering defect.  According to the United States' position, the failure to repair constituted active negligence by the bus company, while the Navy's failure to discover the defect constituted only passive negligence.  The Court denied the bus company's motion to dismiss, finding that, under those circumstances, the "active-passive" distinction was "a question for the trier of fact" and not to be disposed of on a motion to dismiss. Notably, the United States was not accused of vicarious liability, but of its own negligence in failing to discover the defect.

At this stage of the litigation, it is sufficient that Level 3 has alleged negligence claims against Webb and that Webb, in turn, has alleged that Accumark was the principle tortfeasor. Webb has alleged that Accumark's own negligence is more than vicarious, because Accumark itself identified the incorrect location of the cable.  *See Robert's Farm*, 2011 U.S. Dist. LEXIS 4851, at *20; (Am. 3d Party Compl. at ¶ 15.)  By Webb's reliance on the false information when it severed the cable, it could be proven that Accumark's negligence was the proximate cause of Level 3's property damage.  (*Id.* at ¶¶ 16-18.)  It is not appropriate to determine whether the alleged negligence is active or passive solely from the pleadings.  As the Court recognized in

7

*Williams*, "such a determination of 'active-passive' negligence is a question for the trier of fact and thus cannot be resolved at this juncture." *Id.* at 343.

Moreover, Counts I and III of Level 3's Complaint assert causes of action based on strict liability — neither of which implicate the "active negligence" rule. Count I alleges a claim for common law trespass, which the Supreme Court of Virginia recently defined as a strict liability offense. *AES Corp. v. Steadfast Ins. Co.*, __ S.E.2d __, 2012 WL 1377054, at *7 n.1 (Va. April 20, 2012). Count III alleges violations of Va. Code §§ 56-265.17 and 56-265.24. Under Va. Code § 56-265.25, Webb "*shall* be liable to the operator of the underground utility" if it is proven to have violated either provision. (emphasis added). "[C]ourts construe statutes and regulations that make no mention of intent as dispensing with it," thus creating strict liability. *Esteban v. Commonwealth*, 587 S.E.2d 523, 526 (Va. 2003). Since the statutory claims raised in Count III impose strict liability, they are not barred by the "active negligence" rule.

If Webb is ultimately held liable to Level 3 solely for negligence, as opposed to strict liability, the Court may then be required to address whether Virginia's "active negligence" rule precludes a claim for indemnity. But until such time, it is sufficient that Level 3 has alleged alternative theories of recovery that clearly do not implicate the rule. On this basis, the Court will deny Accumark's motion to dismiss Webb's indemnity claim.

## 2.    The Indemnity Claim Is Not Premature

Accumark also argues that the equitable indemnity claim is premature until Webb's liability to Level 3 is established. (Accumark Reply at 3.) At common law, it was "uniformly held [in Virginia] that there can be no recovery on an indemnity obligation where there has been no actual loss or damage." *Am. Nat'l Bank v. Ames*, 194 S.E. 784, 797 (Va. 1938); *see also Stewart Title Guar. Co. v. Virginia Commonwealth Title Co.*, 64 F.3d 659 (Table), 1995 WL

501354, at *4 (4th Cir. Aug. 23, 1995). Applying this rule of Virginia law, the Fourth Circuit has previously held that "there is no right to indemnification until there has been actual loss or damage suffered by the indemnitee." *A/S Ludwig Mowinckles Rederi v. Tidewater Constr. Corp.*, 559 F.2d 928, 934 n.8 (4th Cir. 1977) (applying *City of Richmond v. Branch*, 137 S.E.2d 882 (Va. 1964) and *Am. Nat'l* Bank, 194 S.E. at 797). In other words, the common law rule was that an indemnitee may not bring its claim against its indemnitor until after liability is determined *and satisfied.*

Here, Accumark's reliance on the common law rule is misplaced, since Virginia's legislature abrogated the procedural effect of the rule by statute in 1981. Under Va. Code § 8.01-281(A), an indemnitee may now pursue a "third-party claim . . . for contribution, indemnity, subrogation, or contract, express or implied; it may be based on future potential liability, and it shall be no defense thereto that the party asserting such claim . . . has made no payment." The Supreme Court of Virginia has interpreted this provision as a "mere procedural device[] to promote judicial economy by having all claims, actual or potential, arising from the same transaction or occurrence determined in one proceeding." *Gemco-Ware, Inc. v. Rongene Mold & Plastics Corp.*, 360 S.E.2d 342, 344 (Va. 1987). Although the substantive rule of law has not changed in that the cause of action does not accrue until payment is made, this substantive rule no longer bars third-party practice. *Id.* ("for contribution [or indemnity] to lie, the injured party's cause of action against the third-party defendant need not be *presently* enforceable") (emphasis in the original) (citation omitted). In other words, Virginia's legislature has eliminated the procedural bar to third party practice that otherwise would result from the substantive rule governing accrual of derivative claims.

9

Having severed the substantive rule of law from the procedural device of third party practice, derivative indemnity claims may now be asserted together with the main action under Fed. R. Civ. P. 14(a)(5). *See Kohl's Dep't Stores, Inc. v. Target Stores, Inc.*, 290 F. Supp. 2d 674, 689 n.20 (E.D. Va. 2003) (applying Fed. R. Civ. P. 14 and Va. Code § 8.01-281 to allow indemnity claim "for potential future liability"). Accordingly, Accumark's motion to dismiss Webb's indemnity claim will be denied.

## B.    Contribution (Count III)

Accumark challenges Webb's claim for contribution, arguing that it owed no duty to the injured party — Level 3. (Accumark's Mem. at 5.) In doing so, Accumark asserts that no "relationship" exists "that would give rise to a claim by Level 3 against Accumark." (*Id.*) This argument follows the general rule that "a contribution plaintiff cannot recover from a contribution defendant unless the injured party could have recovered against the contribution defendant." *Pierce v. Martin*, 334 S.E.2d 576, 578 (Va. 1985) (citations omitted). However, the premise on which Accumark's argument relies — the lack of any duty owed to Level 3 — must be more closely examined before applying the general rule.

The Supreme Court of Virginia has recently adopted Restatement (Second) of Torts § 324A, which explicitly imposes a duty on service providers with respect to third parties. In *Burns v. Gagnon*, __ S.E.2d __, 2012 WL 1377100 (Va. April 20, 2012), the Court explained:

> In accordance with the principle of assumption of a duty, an actor who fails to exercise reasonable care in performing his undertaking may be subject to liability for physical harm caused not only to the one to whom he has agreed to render services, *but also to a third person.* Liability to the latter is addressed in Restatement (Second) of Torts § 324A, which provides:
>
>> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as *necessary for the protection of a third person or his things, is subject to liability to*

*the third person* for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

*Burns*, 2012 WL 1377100, at *7 (emphasis added).

Here, Webb has alleged that it hired Accumark to locate all utilities owned by third parties in the area where it was excavating. This included Level 3's fiber optic cables, which Webb alleges were incorrectly located due to Accumark's negligence. Applying Restatement § 324A to these facts, and construing the pleadings in Webb's favor as it is required to do, *T.G. Slater*, 385 F.3d at 841, Webb could ultimately prove that Accumark either undertook to perform a duty that Webb owed to Level 3 or that Level 3 suffered its injury because of Webb's reliance on Accumark. By its adoption of Restatement § 324A, the Supreme Court of Virginia now recognizes that Accumark owed a duty to Level 3. Because the requisite duty was owed to the injured party, Webb may bring its claim for contribution. Thus, the Court will deny the motion to dismiss Count III.

## IV. CONCLUSION

For the reasons discussed herein, Third-Party Defendant Accumark's Motion to Dismiss (construed as a motion for judgment on the pleadings) (ECF No. 24) is DENIED.

An appropriate Order shall issue.

_____  /s/

David J. Novak
United States Magistrate Judge

Richmond, Virginia
Dated: June 14, 2012

11